M. D. LANDAU *v.* E. O. SYKES, RECEIVER.

[54 South. 3.]

1. DEED OF TRUST. *Plant and equipment. Meaning.*

The words, "plant and equipment" when applied to deed of trust given by a manufacturing establishment includes articles used in connection therewith for the convenient operation thereof, but not absolutely essential thereto.

2. EQUIP.

The word "equip" means to furnish for service or against a need of exigency; to fit out; to supply with whatever is necessary to efficient action in any way.

3. EQUIPMENT.

The word "equipment" means whatever is used in equipping, it being the collective designation for the articles comprising an outfit; it

includes not only machinery and office furniture, but books, written letters and numerous other things in connection with the business and necessary to the convenient transaction of a business. .

Appeal from chancery court, Monroe county.

Hon. J. Q. Robins, Chancellor.

Suit by M. D. Landau against E. O. Skyes as receiver of the Aberdeen Oil and Ice Company. Judgment for defendant and complainant appeals.

The facts are fully stated in the opinion of the court.

*Hirsh, Dent & Landau,* for appellant.

We respectfully ask the court to bear in mind that the descriptive language in the deed of trust under which we are basing our present contention, is the following:

"It being understood that this conveyance is intended to include all of the property of every kind and description now in the possession of and owned and operated by said Aberdeen Oil & Ice Company and constituting a part of its plant and equipments in the city of Aberdeen, Monroe county, Mississippi, whether herein specifically described or referred to or not."

As hereinbefore pointed out, it is agreed that the articles sold to Mr. Cahn by the receiver, shown in exhibit "A" to the "Agreed Statement of Facts," the proceeds whereof are claimed by appellant, as purchaser under the deed of trust, were on the premises of said Aberdeen Oil & Ice Company when the deed of trust mentioned was executed, and were there when the sales by the substituted trustee and receiver were made.

The sole question to be determined, therefore, is whether or not any part, or all, of the personal property sold by the receiver, the proceeds whereof are so claimed by the appellant, constituted a part of the "plant and equipment" of the Aberdeen Oil & Ice Company.

The agreed statement of facts shows:

"That the coal was bought for the operation of the machinery and that the hull and meal bags were used for the shipment of hulls and meal."

The learned court below held that the coal and hull and meal bags were not covered by the phraseology of the deed of trust and as we recognize that this holding is consonant with a fair and reasonable interpretation of the language used in the deed of trust, especially as the coal was for consumption and as the hull and meal bags were intended for sale, and neither the coal, nor the bags, reasonably intended to remain a permanent part of the property of the Aberdeen Oil & Ice Company, we have no disposition to question the holding of the court below, in this respect.

With reference to the other articles of personal property, the proceeds of which the court denied appellant, the agreed statement of facts shows, that "they are all articles which are usually and ordinarily used in connection with the office and operation of oil mills, ice factories and ginning plants"—the business in which the Aberdeen Oil & Ice Company was engaged—and are also "usually and ordinarily used in connection with the offices of any other factory, mercantile establishment, bank, law office or other business office, which have an up to date office outfit," and that "while these same articles are not necessary to the prosecution of the oil mill, ginner or ice plant, or any of these other businesses in which they may be found and used," they are up to date conveniences for the oil mill and other establishments as above set out and that while they are not peculiarly or specially adapted to the oil mill, ice or ginning business, and may be used in any other business above mentioned, and while it is possible to conduct a ginning business, an oil mill or ice factory without all or some of these articles, that these articles add greatly to the convenience of all the business mentioned and to the proper conduct thereof.

98 Miss.—32

In other words, the agreement, in substance, recites that while these articles are usually and ordinarily used in connection with the business in which the Aberdeen Oil & Ice Company was engaged at the time it executed its deed of trust, and in connection with the operation of which it used them, and are "up-to-date" conveniences for the operation of the business in which said company was engaged, and add greatly to the convenience and proper conduct thereof, and also partake of the same characteristics when used in connection with other enterprises.

As hereinbefore pointed out, the learned court below awarded appellant the proceeds of the ceiling fan, amounting to sixteen dollars, but denied him the proceeds of the other articles of office furniture including books, records, stationery, stoves, linoleums, chairs, iron safe, typewriter, desks, tables and adding machines, although, under the agreed statement of facts, the ceiling fan bore some character attributed to the other articles mentioned.

We respectfully submit that as the record shows that said articles were situated on the premises described in the deed of trust, at the time of the execution of that instrument, and at the time of the purchase by appellant, and as the Aberdeen Oil & Ice Company was, therefore, at the times mentioned, "equipped" with said articles, they necessarily constituted a part of the equipment of said company, and were therefore covered by the terms of said deed of trust, under the agreement made between all of the parties interested, as hereinbefore shown, the proceeds thereof properly belong to appellant.

We respectfully contend that the fact that these articles might have been used as a part of the plant and equipment of some other enterprise, did not prevent them from being, as a matter of fact, a part of the equipment of the Aberdeen Oil & Ice Company in connection with which they were actually used. If the mere fact that an

individual article might be used in the operation of two or more enterprises shall deprive it of the character of being a part of the equipment of an enterprise in connection with which it is actually used, it would essentially follow that no individual article can constitute a part of the plant or equipment of any enterprise unless it be an article which is susceptible to only one use in connection with one particular kind of business.

The question is, not whether the article might have constituted a part of the plant or equipment of some other enterprise, but whether they did constitute a part of the equipment of this particular concern, namely, the Aberdeen Oil & Ice Company.

That they did constitute a part of the equipment is indisputably shown by the agreed facts.

We find the word "equipment" defined in Century Digest and Encyclopedia, vol. 3, p. 1985 as follows:

"Anything that is used in or provided for equipping, as furniture, habiliments, war like apparatus, necessaries for an expedition or for a voyage, or the knowledge and skill necessary for a vocation, as the equipment of a hotel, a ship or a railroad; the equipment of a man for the ministry, or for the law."

We find the word "equipment" defined by Webster, as follows:

"Whatever constitutes an outfit for some special purpose." The "special purpose" for which the articles now in controversy were used by the Aberdeen Oil & Ice Company was the equipment and operation of its office.

In the case of *Chicago, Milwaukee & St. Paul R. R. Co.* v. *Hoyt et al.,* 89 Wis., p. 314, 67 N. W., p. 189, the court in construing an agreement involved in that proceeding, said:

"By equipment as used, we understand reference is made to the locomotives, cars, furniture, etc., with which the three railroads mentioned were, at the time of closing the deal, to be equipped."

Paraphrasing this language we may say that by "equipment" as used, we understand reference is made to the furniture, etc., with which the Aberdeen Oil & Ice Company was, at the time of the execution of the deed of trust, "equipped."

*Sykes & Sykes,* for appellee.

The deed of trust in question from the Aberdeen Oil & Ice Company to Leftwich, trustee, etc., conveys certain real estate in the city of Aberdeen, describing same, together with all houses, buildings, structures, improvements, and machinery, now or hereafter situated on or belonging to said lands, as well as easements, rights, ways, privileges, thereunto belonging or appertaining, or in any wise appertinent or appertaining thereto. Now, up to this point, it is clearly a mortgage upon the land, machinery and fixtures, that is to say, it does not convey any personalty: Then proceeding this deed of trust reads as follows: "It being understood that the conveyance is intended to include all of the property of every kind and description now in the possession of and owned and operated by the said Aberdeen Oil & Ice Company, and constituting a part of its plant and equipment in the city of Aberdeen, Monroe county, Mississippi, whether specifically described or referred to or not." What effect then, has this latter clause? It would appear at first blush as an "*omnium gatherum*" clause. We contend that a fair and reasonable construction of the latter clause, simply means that this being a mortgage of real estate with the machinery of an oil mill, ice factory and ginnery located thereon and very little being said about the description of the machinery of either of the three plants and the machinery of these plants being necessarily varied and extensive as their natures would suggest, the thought or idea would naturally occur to the draftsman out of abundant caution, to add a clause which would cover as nearly as possible not

only all of the machinery, but all that was "appur-
tenant," or "appertained" or belonging thereto of every
kind and description now in the possession of and owned
and operated by the said Aberdeen Oil & Ice Company
and constitute a part of its plant and equipment, which
means of course the machinery which is being operated
with its fixtures, of the several plants before mentioned,
with such other tools, not being fixtures, but being spe-
cially adapted or essential to the proper use of these
plants.   This would be, and is, we think, the fair and
reasonable interpretation of the two clauses above and
which is relied upon by the counsel for appellant, and
supported, we think, by authority:   Jones on Mortgages,
vol. 1, 2nd Ed., §§ 444 and 445, and citations under said
sections, not at hand.   See also sections 435 and 430.

If the mortgagor had owned and been in possession
of other personal property, not pertaining or belonging
or essential to the machinery which was the subject,
surely it would have been the duty of the Scrivener to
have described the personalty so intended to be con-
veyed; but as the machinery was the subject and that
of like character or nature, "*ejusdem generis,*" then it
was only necessary to use language of general terms, viz:
every kind and description of machinery or that which
appertained thereto, now in the possession and being
operated by the Aberdeen Oil & Ice Company and re-
ferring all the while to machinery and fixtures, or other
essentials not being fixtures, but specially adapted to
the proper and necessary use of the machinery.

The counsel for appellant concede the correctness of
the chancellor in adjudging the steam and domestic coal
to be personalty, and awarding same to the receiver, and
we will show that he was consistent in his rulings
throughout; that is to say, he followed the rule we have
above laid down, that the mortgage above was given upon
real estate and the machinery located thereon with what-

ever appertained thereto, or was essential or specially adapted to the business engaged.

Now this coal was as useful and as essential and equally well adapted to any other factory of any sort run by steam, as it was to the Aberdeen Oil & Ice Company; hence as it was an item wholly different in kind, it did not, nor was it the intention of the grantor that it should pass to the grantee in the mortgage. The same may be said of the bags, intended for the shipment of cotton seed hulls and cotton seed meal, transitory and somewhat like the coal practically consumed in the use of them; that is shipped away in their use and seen no more. Necessarily personalty, and so conceded by counsel for appellant, and properly adjudged by the court to belong to the receiver.

The "ceiling fan" which was awarded to appellant by the chancellor, was done necessarily upon the ground, or for the reason that it was a fixture, being attached or affixed to the ceiling of the office, and we concede that it was a correct ruling. The court likewise adjudged the work bench, vise, saw, filing machine, belt lacing machine, bits, hammers, etc., to the appellant, being done, we imagine upon the theory that these things were either fixtures or essentials to the proper use of the machinery, or its repair, or its permanent equipment, as being especially suited, etc.

With reference to the other articles adjudged to be personalty and properly in the hands of the receiver, we would say, that each article is personalty; neither essential nor specially adapted to the use of the appellant. Take the iron safe, desks, tables, adding machine, two typewriters, chairs, etc.; these articles are just as well suited to an up-to-date office of a lawyer, doctor, or banker as the office of appellant, wholly indifferent, so far as being essentially necessary to an oil mill or ice

plant, or a ginnery plant with no especial adaptability.; perhaps more convenient and stylish only.

The appellant rests his whole claim upon the sole question as to whether or not the personalty here claimed constitutes a part of the "plant or equipment" of the Aberdeen Oil & Ice Company. We have answered the query in the above argument and may again answer the same by saying it does not in the sense that counsel for appellant understands it.

The word, "plant" conveys the idea of permanency, fixedness, and fixtures. The definition of the word, "equipment," as defined in the brief of appellant, Century Digest or Encyclopedia, very nearly meets our views, viz.: "Anything that is used in or provided for equipping." Necessaries: That which is necessary or essential in a proper outfit; not anything that would strike one's fancy, not necessary nor essential, and it must be something of a permanent nature, but fixtures, etc.

The court will observe that the mortgage is not a chattel mortgage, if so, then the personalty or chattels would have been definitely described, in fact, it would have been and is required under the law, but on the contrary it is a mortgage of real estate, laboriously and accurately described, together with the structures, improvements, machinery, rights, ways, etc., and appurtenances, etc. Then follows the "*omnium coverem.*" clause, and especially the clause relied upon by appellant, viz.: All property of every kind in the possession of and owned and operated by the Aberdeen Oil & Ice Company and constituting its plant and equipment. The word "operated," by, etc., is a techical word and used especially with reference to the running and operating of machinery. No one ever heard of running or operating any of the personal property here enumerated: chairs, iron safe, linoleum, tables, etc. You do, however, operate the typewriters and perhaps the adding ma-

chines, but they are so clearly office furniture for convenience, and not essential, etc., that they verify the correctness of the rule, being the exceptions. The words, "plant" and "equipment" are here used as synonyms, and we submit, show conclusively that it means permanent, fixed, etc. Webster's New International Dictionary defines "plant:" "The machinery, apparatus, fixtures employed in carrying on a trade." . Equipment before referred to means about the same. So we have not merely the rule of *ejusdem generis,* but according to the above definition, all of the property of every kind, constituting the machinery, apparatus and fixtures, employed in operating the Aberdeen Oil & Ice Company is intended to pass by the conveyance, which in plain English means fixtures and appurtenances belonging to the machinery located upon the real estate described, etc., but to give it a broader interpretation—or one that conveys all the personalty found upon the premises, in no wise attached to the soil or appurtenant to the machinery, or essential to its use, or peculiarly adapted to its service, is from our view point most remote and strained. To say more would appear to argue in a circle. We therefore ask an affirmance of the decision of the lower court.

Smith, J., delivered the opinion of the court.

The Aberdeen Oil & Ice Company, being indebted to the Monroe Banking & Trust Company, and desiring to secure the payment thereof, executed and delivered to the Monroe Banking & Trust Company a deed of trust, covering among other property the following: "All houses, building, structures, improvements, and machinery now or hereafter situated on or belonging to said lands (meaning the lands described in said deed of trust), as well as all easements, rights, ways, and privileges thereunto belonging or in any way appurtenant or appertaining thereto. It being understood that this conveyance is intended to include all of the property of

every kind and description now in the possession of and
owned and operated by the said Aberdeen Oil & Ice Com-
pany, and constituting a part of its plant and equip-
ments in the city of Aberdeen, Monroe county, Missis-
sippi, whether herein specifically described or referred
to or not." Default having been made in the payment of
the debt secured by this deed of trust, the same was fore-
closed by the trustee, and appellant at such foreclosure
sale became the purchaser, along with other property, of
the following: One lot steam coal; one lot domestic
coal; one iron safe; one table desk; two small tables;
one adding machine; one Remington typewriter No.
seven; one Remington typewriter No. eight; one copy
press and bath; one typewriter desk; seven chairs; lino-
leum; two stoves; one ceiling fan; books, records, and
stationery; work bench, vise, saw-filing machine, belt-
lacing machine, bits, hammers, etc.; one lot hull bags;
one lot meal bags; one bookkeeper's desk.

The question submitted to the court below upon an
agreed statement of facts was whether or not said
articles were embraced in the description of the property
conveyed by said deed of trust. The court held that none
of said articles were embraced in said description, ex-
cept the ceiling fan, work bench, vise, saw-filing machine,
belt-lacing machine, bits, and hammers. It is conceded
here by counsel for appellant that the coal and the hull
and meal bags are not embraced in said description, so
we are called on to determine only the correctness of
the holding of the court with reference to the remaining
articles; the same being office furniture. That portion of
the agreed statement of facts necessary to be here set
out is as follows:

"It is agreed that the coal was bought for the opera-
tion of the machinery; that the hull and meal bags were
used for the shipment of hulls and meal; the work bench,
vise, saw-filing machine, belt-lacing machine, bits, ham-
mers, etc., were kept for the purpose of repairing ma-

chinery, fastening the belting, and for any other purpose for which they were adaptable, etc.; that the iron safe was used to keep safe the office books, and also to keep currency with which to buy cotton seed, and anything else its owners wanted to purchase, in it; the table desk, chairs, small tables, adding machine, typewriters, copy press, and both typewriter desks, seven chairs, the linoleum, and two stoves, ceiling fan, books, records, and stationery were all articles which are usually and ordinarily used in connection with the office and operation of oil mills, ice factories, and ginning plants, and other factories, offices of wholesale mercantile houses, etc.

"Under the above agreed facts, and such facts as the court takes knowledge of, as a matter of course, and under the facts and descriptions contained in the deed of trust, the court shall decide whether the chattels mentioned were conveyed to the Monroe Banking & Trust Company by its deed of trust or not.

"It is also agreed and understood that the articles of office furniture, including the books, records, stationery, ceiling fan, stoves, linoleum, chairs, iron safe, typewriters, desks, tables, and the adding machine, are usually and ordinarily used in connection with the offices of any other factory, mercantile establishment, bank, law office, or other business office, which have an up-to-date office outfit; while these same articles as above mentioned are not necessary to the prosecution of the oil mill, ginning or ice plant, or any of these other businesses in which they may be found and used, but are merely up-to-date conveniences for the oil mill and other establishments as above set out; that they are not peculiarly or specially adapted to the oil mill, ice, or ginning business, but may be used in any other business above mentioned; that it is possible to conduct a ginning business, an oil mill, or ice factory without all or some of these articles. It is further agreed, however, that these articles add greatly to the convenience of all the busi-

nesses mentioned and to the proper conduct thereof. It is agreed that the steam coal and the bags and the tools used in the engine rooms are necessary to the operation of an oil mill and a ginning business, and are also necessary to any factory or mercantile plant run by steam, as this one was so operated.

"It is also agreed that all of the property described in Ehibit A, each and every article thereof, was on the premises when the said deed of trust was given to the said Monroe Banking & Trust Company, where they remained when the said sales took place."

It is not necessary for us to decide whether the word "plant," when applied to a manufacturing establishment, includes articles used in connection therewith for the convenient operation thereof, but not absolutely essential thereto; for the words "its plant and equipments," as used in the deed of trust now under consideration, do necessarily include such articles. The word "equip" means "to furnish for service, or against a need of exigency; to fit out; to supply with whatever is necessary to efficient action in any way." And the word "equipment" means "whatever is used in equipping; . . . the collective designation for the articles comprising an outfit." Webster's New International Dictionary. The establishment which the company maintained for conducting the business in which it is engaged was equipped, not only with the machinery necessary for the manufacture of oil and ice and for the ginning of cotton, but with such office furniture as would enable it to conveniently keep a record of its various transactions. Books must be kept, letters written, and numerous other things done in connection with such a business, which could only be conveniently done by the maintenance of an office equipped with the necessary furniture. The articles in question, therefore, constitute a part of the company's equipment.

The judgment of the court below is reversed, and decree here for appellant.                    *Reversed.*