ETHEL STILWELL SMULL, Plaintiff, *v.* JOHN H. DELANEY and Others, Defendants.

Supreme Court, Special Term, New York County, February 8, 1941.

*Nordlinger, Riegelman & Cooper* [*Harold Riegelman, H. H. Nordlinger* and *Jacob M. Dinnes* of counsel], for the plaintiff.

*William C. Chanler, Corporation Counsel* [*John G. Clancy* of counsel], for the defendants other than the Twin Coach Company.

*Bandler, Haas & Collins* [*John F. Collins* and *Harry Merwin* of counsel], for the defendant the Twin Coach Company.

EDER, J. Motion for injunction *pendente lite.* Cross-motions to dismiss the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action. The plaintiff, a taxpayer, brings this action to enjoin performance of contracts for the lease to the board of transportation of the city of New York of two hundred and fifty omnibuses, having a capacity for forty persons per vehicle, as omnibus equipment in substitution of and to replace existing trolley car equipment for transportation of passengers on certain street surface lines in Brooklyn. The leases were made with defendant Twin Coach Company with the approval and consent of the board of estimate of the city; they provide, among other things, for the leasing of the omnibuses at a stipulated monthly rental, for a period of seven years at a total rental cost of $3,347,996.40, that the rental costs shall be con- sidered operating expenses of the New York city transit system, operated and maintained by the board of transportation (a State body) acting on behalf of the city of New York and that the rentals shall be paid from the operating fund of the system, composed of the revenues therefrom.

The plaintiff claims that the board of transportation and the city are without power to acquire such equipment by lease under the provisions of the Rapid Transit Act (Laws of 1891, chap. 4, as amd.) and article VIII of the Public Service Law; that such equip- ment can only be acquired by outright purchase and must be paid for by the issuance of city bonds as required by said laws; that the contracts are also invalid because they are for a period of seven years, in contravention of subdivision 20 of section 8-b of the General Municipal Law, which fixes the period of probable use- fulness of motor vehicles other than passenger vehicles having a seating capacity of less than ten persons, as five years, which fixation period, by section 2 of article VIII of the State Consti- tution is made conclusive and hence the contracts complained of violate this provision of the Constitution; there is the further claim that the contracts also violate section 4 of said article VIII of the State Constitution which limits and restricts the city's constitutional indebtedness; and, finally, that the contracts are improvident.

At the outset it may not be amiss to state that the board of transportation and the city acknowledge, tacitly, at least, that there is no direct grant of power to acquire omnibus equipment by lease or to pay the rental charges therefor out of the said operat-

ing fund as operating expenses of the said system but maintain, however, that such powers are to be implied by a reasonable construction of the provisions of the Rapid Transit Act and the Public Service Law.

The board of transportation solicits the attention of the court to the feature that if the board is held to be unpossessed of such implied powers it will necessitate the installation of cables and wires to enable the trolley cars to function and that the power cables and trolley wires of four of the lines are attached to the discontinued Fulton street elevated railroad structure which is to be demolished and this installation and relocation of electrical facilities will involve the city in a substantial outlay and that the lease of omnibus equipment as a substitution for the existing trolley car system of transportation is the better plan and method. I ascribe the best of motives to the board in entering into the contracts involved and it was clearly actuated by the firm belief and conviction that that course was for the best interests of the city. Such motive which is a matter of the balancing of conveniences cannot be accepted by the court as an element of consideration even though inclined to do so; such a plea must be addressed to the Legislature which may grant relief by appropriate enactments (*Matter of Hering*, 196 N. Y. 218, 220–221; *Osborn* v. *O'Brien*, 239 App. Div. 453; affd., 264 N. Y. 469); the duty of the court is to construe and interpret the law; it may not usurp legislative functions. (*Osborn* v. *O'Brien, supra.*)

Upon due reflection, it is my conclusion, for the reasons currently given, that there is no implied power in the board of transportation or the city to acquire such omnibus equipment by lease or to determine that the rental costs thereof are payable as operating expenses from the said operating fund of the system, and this in my opinion presents sufficient reason to grant the injunction sought, irrespective of any other reasons assigned.

The powers of the board of transportation are to be found in the Rapid Transit Act and the Public Service Law. With respect to the operation and maintenance of rapid transit facilities and the acquisition of equipment therefor the provisions of these laws having any reference thereto are section 26, subdivision 4, and sections 27, 28, 30, 35 and 37 of the Rapid Transit Act and article VIII, sections 134½ and 136 of the Public Service Law. These sections, with but one exception, all provide for contracting for construction and equipment and nowhere provide for the acquisition of equipment by lease; there is a consistent reference to contracting and the word lease is nowhere mentioned in that regard. For example, section 26 of the Rapid Transit Act (added as § 34 by Laws

of 1894, chap. 752, § 9, so renumbered and amd. by Laws of 1909, chap. 498, § 9, as amd.), which deals with municipal construction, repeatedly refers to contract and nowhere mentions lease; subdivision 4 thereof, particularly, refers to contract for both construction and for equipment. After providing for a contract for construction it provides for equipment, *i. e.*, " may make a separate contract or contracts for the whole or any part of such equipment." Section 27 of said act is entitled " Contract for equipment, maintenance and operation." Section 28 is entitled " Contract for maintenance and operation " and provides for authority to equip the roads by " contract or contracts therefor." Section 30 of said act (added by Laws of 1906, chap. 472, § 6, so renumbered and amd. by Laws of 1909, chap. 498, § 13, and amd. by Laws of 1940, chap. 560), entitled " Plans for maintenance and operation of road by Public Service Commission," * in subdivision 1 thereof speaks of " contract for equipment." Section 35, entitled " Equipment," speaks of " contract for such equipment." No reference to any power to lease appears except in a single instance mentioned in section 30 which refers to the " leasing under a contract or contracts for the use of the tracks of any railroad for operation of cars thereon." Section 37, in subdivision 1 thereof, which provides the method of payment for equipment, speaks of acquisition " by purchase " and nowhere mentions acquisition by lease. The defendants answer by saying that a lease is a contract and as such is included within that term. It is true enough that a lease is a species of contract, but it is not the type of contract which is contemplated by these provisions.

It is clear from these provisions as well as the titles thereof that no express grant of power is conferred upon the board to enter into any contract for the leasing of equipment, and while, of course, the title of an act forms no part of the law itself, yet it may be legitimately resorted to as an aid in ascertaining the legislative intent where that intent is somewhat otherwise obscure. (*People* v. *Draper*, 169 App. Div. 479.) And I think it is equally apparent that those statutes do not intend to confer upon the board or city any power to lease transit equipment except in the single instance mentioned and even then such power is expressly limited to leasing the use of tracks for the operation of cars thereon. Accepted canons of statutory construction point to the conclusion that the expression of this limited purpose precludes the inference that the Legislature intended the statute to have a broader effect. (*Matter of Hering*, 133 App. Div. 293; affd., 196 N. Y. 218; *Buoneto*

---

* See Pub. Service Law, § 134.— [Rep.

v. *Buoneto*, 254 App. Div. 75; Id. 688; revd. on other grounds, 278 N. Y. 284; *Matter of Herle*, 165 Misc. 46, 52; *Bowdler* v. *St. Johnsbury Trucking Co.*, 4 A. [2d] 871; 2 Sutherland on Statutory Construction [2d ed.], § 494; 2 Black on Interpretation of Laws [2d ed.], § 72, p. 222.)

In submitting the claim that the board has by fair construction, the implied power to lease omnibus equipment, reliance is placed on section 134½ of the Public Service Law (as amd. by Laws of 1940, chap. 810, effective July 1, 1940). This is entitled "Additional powers and duties of board of transportation," and in the last sentence thereof it is provided that " The board of transportation shall also be empowered to purchase all necessary materials and supplies for such operation and maintenance, and, generally, to exercise all requisite and necessary authority to manage and direct the operation and maintenance of such road for the convenience and safety of the public."

While such a provision can be construed as conferring implied powers upon the board of transportation in addition to powers expressly granted, nonetheless it cannot be read as an isolated provision but must be read in connection with the general tenor of the whole law to which it refers or of which it forms a part. No one section or subdivision is to be picked out and literally applied. Section 134 relates to the " Powers and duties " of the board of transportation; section 134½ relates to " additional " powers and duties of the board, but none of these sections relate to or deal with the acquisition by lease of omnibus equipment for the operation and maintenance of rapid transit facilities. The power conferred by the mentioned sentence to purchase all necessary materials and supplies for operation and maintenance may not by reasonable construction be said to include in that category the acquisition of omnibus equipment by lease. A purchase of property involves a transfer of ownership, a passing of title; a lease thereof does not; title always remains in the lessor but the lessee merely has the use of the leased property until the expiration of the term. Nor can the power to purchase materials and supplies by reasonable implication be said to include a complete substitution of equipment. Materials relate to such articles only as enter into and form part of the finished structure or are capable of being so used and are furnished for that purpose (*U. S. Fidelity & Guaranty Co.* v. *DuPont & Co.*, 197 Wash. 569; 85 P. [2d] 1085, 1089); supplies relates to something used directly in the carrying on of the work, something in addition to it (*U. S. Fidelity & Guaranty Co.* v. *DuPont & Co.*, *supra*); those articles necessary for enabling an existing entity to function properly (*Gibbons* v. *Steamboat Fanny*

*Barker*, 40 Mo. 253, 256); equipment is the combination of all elements necessary to carry out the project. (*U. S. Fidelity & Guaranty Co.* v. *DuPont & Co., supra; Landau* v. *Sykes*, 98 Miss. 495; 54 So. 3, 4); equipment as applied to railroad transportation means the necessary adjuncts of an existing railway. (*Smith Lumber Co.* v. *Fox*, 231 Ala. 159; 164 So .214; *Chicago, M. & St. P. Ry.* v. *Hoyt*, 89 Wis. 314; 62 N. W. 189.)

As used in section 134½ the phrase " all necessary materials and supplies " clearly relates to the acquisition of such items as are necessary for the operation and maintenance of existing equipment; nor can " materials and supplies " be reasonably construed to imply new equipment or a complete substitution of existing equipment.

The phrase in section 134½ " and, generally, to exercise all requisite and necessary authority to manage and direct the operation and maintenance of such road " means the right to conduct, to engage in, to act authoritatively in the business of such transportation (*State* v. *Thomason*, 276 N. W. 619, 620), to continue that which is in existence (*Child* v. *Washed Sand & Gravel Co.*, 181 Minn. 559; 233 N. W. 586, 587; maintenance connotes the acquisition of items necessary to the repair and preservation of an existing structure and incidental to the carrying on of the service. (*State ex rel. Kings County* v. *Murrow*, 199 Wash. 685; 93 P. [2d] 304, 308.) Nor is this phrase to be read disconnectedly, wholly divorced from the text, but it is to be read with all other applicable and associated provisions of law. To hold otherwise would, it seems to me, render inoperative applicable provisions of the Rapid Transit Act; such was clearly not the intention of the Legislature for the Rapid Transit Act and the Public Service Law together are intended to form a consistent and harmonious whole. (*Osborn* v. *O'Brien, supra.*)

I am not unmindful of the rule of statutory construction to the effect that if the language of a statute indicates that things other than those mentioned are intended to be included within its operation it will be so construed (*Matter of Engel*, 155 App. Div. 467) and the rule that whenever the provision of a statute is general, everything which is necessary to make such provision effectual is necessarily implied as if written therein (*People ex rel. Huntington* v. *Crennan*, 141 N. Y. 239, 244); likewise, the rule that whenever a statute grants the power to do an act all reasonable and necessary incidents in the manner of exercising the power are also granted. (*Mayor of New York* v. *Sands*, 105 N. Y. 210; *People* v. *Davis*, 78 App. Div. 570; *Matter of Seneca Oil Company*, 153 id. 594; affd., 208 N. Y. 545. See, also, *Baird* v. *Mayor of New York*, 96 N. Y.

567, 581; *Le Couteulx* v. *City of Buffalo*, 33 id. 333.) This, however, presupposes the grant and existence of basic power; here no such power has been granted and hence these rules are inapplicable. Due regard must be had for and due weight given to the principle in the interpretation of statutes that the specific mention of one thing implies the exclusion of other things. (*People ex rel. Killeen* v. *Angle*, 109 N. Y. 564; *Matter of Engel, supra: Matter of Aylesworth*, 170 App. Div. 34.)

The reason behind the rule allowing the court to give effect to necessary implications is that matters of minor detail are oftentimes omitted from legislative enactments and if these could not be supplied by implication the drafting of legislation would be an interminable process and the true intent of the Legislature likely to be defeated and the court in supplying a necessary implication is merely determining and making effective the legislative will. (Crawford, Statutory Construction [1940 ed.], § 168, p. 267.) But where the statute is express and specific as to the basic powers conferred, and expressly defines the exceptions, no others can be implied. (*Matter of Hering; Buoneto* v. *Buoneto; Matter of Herle; Bowdler* case, *supra;* Sutherland; Black, *supra.*)

The whole tenor of the Rapid Transit Act and the Public Service Law excludes any intention to confer upon the board of transportation or the city the power to acquire equipment by lease. Rather, a fair and reasonable construction thereof leads to the conclusion that the acquisition of equipment was intended to be accomplished by outright purchase. The suggestion is offered that analysis of the provisions of the Rapid Transit Act and the Public Service Law shows that they can have no application to the leases complained of in the instant action as the term " railroads " used in these statutes has a much narrower meaning than the term " transit facilities " as added to certain sections of the acts by amendment at the 1940 session of the Legislature and that prior to 1940 the Rapid Transit Act never contemplated the ownership or operation on behalf of the city of any " transit facility " other than " railroads." This is urging a strait-jacket construction which, if adopted, can only serve to defeat rather than carry out the true legislative purpose and intent. There is nothing mysterious about the words " rapid transit." The scheme of rapid transit is old; and historical checkback will disclose that the very name " rapid transit " antedates and is far older than the Rapid Transit Act of 1875, apparently first so named.

The amendments are to be viewed and understood in connection with the history and purposes of the acts. (*People* v. *Draper, supra,* p. 485.)

As to the contention that the board has implied power to determine that the rental costs under the leases assailed shall be considered as operating expenses of the system to be paid out of the revenues comprising the operating fund, it is my opinion the board has no such power and that the statute which is applicable as respects payment for equipment properly acquired by purchase is section 37 of the Rapid Transit Act (added by Laws of 1894, chap. 752, § 9, as last amd. by Laws of 1909, chap. 498, § 17, and Laws of 1921, chap. 608), entitled "Issue of bonds by city," which in subdivision 1, provides: "For the purpose of providing the necessary means for such construction, or equipment, or both, as the case may be * * * the board of estimate and apportionment * * * shall direct the comptroller * * * and it shall thereupon become his duty, to issue the bonds of said city at such a rate of interest, as the board of commissioners of the sinking fund of said city, * * * may prescribe. * * * They shall not be sold for less than the par value thereof, and the proceeds of the same shall be paid out and expended for the purposes for which the same are issued, upon vouchers certified by said public service commission. Said bonds * * * shall be payable at maturity out of a sinking fund to be established and created out of the annual rentals or revenues of said road * * *. But this provision that the said bonds shall be payable out of such sinking fund shall not diminish or affect the obligation of said city as a debtor upon said bonds * * *." A reading of section 136 of the Public Service Law, entitled "Municipal operation; revenue and accounts; operating fund; other funds," subdivisions 1, 4 and 6 thereof, is confirmatory of this view. Significant, too, is the following provision of section 2 of article VIII of the State Constitution: "Notwithstanding the foregoing provisions, indebtedness contracted by the city of New York and each portion of any such indebtedness from time to time so contracted for * * * (b) the acquisition, construction or equipment of rapid transit railroads * * * may be financed either by serial bonds with a maximum maturity of fifty years, in which case such indebtedness shall be paid in annual installments as hereinbefore provided, or by sinking fund bonds with a maximum maturity of fifty years, which shall be redeemed through annual contributions to sinking funds established and maintained for the purpose of amortizing the indebtedness for which such bonds are issued."

Regarding the contention that the contracts are invalid in that they also offend section 2 of article VIII of the State Constitution and subdivision 20 of section 8-b of the General Municipal Law, these contentions appear to me to be meritorious and sound.

Section 2 of article VIII of the State Constitution provides: " No indebtedness shall be contracted for longer than the period of probable usefulness of the object or purpose for which such indebtedness is to be contracted, to be determined by or pursuant to general or special laws, which determination shall be conclusive  *  *  *." Subdivision 20 of section 8-b of the General Municipal Law which was enacted in compliance with the requirements of section 2 of said article VIII, is entitled, " Periods of probable usefulness " and reads as follows: " In compliance with the requirements of section two of article eight of the State Constitution the period of probable usefulness of the several objects and purposes described below for which indebtedness may be contracted by any  *  *  * city  *  *  * empowered by law to contract indebtedness, is hereby determined to be as follows, notwithstanding the provisions of any general, special or local law.  *  *  *  20. Fire and police apparatus and other vehicles.  Purchase of motor vehicles, other than passenger vehicles having a seating capacity of less than ten persons, five years."  The language of subdivision 20 of section 8-b is perfectly clear; it fixes the probable usefulness of motor vehicles, other than passenger vehicles having a seating capacity of less than ten persons, at five years; the omnibuses sought to be acquired would accommodate forty persons, and the leases are for a term of seven years.  This is in direct violation of these provisions and is adequate cause to adjudge the contracts void.

In view of the conclusions I have reached I do not consider it necessary to pass upon or determine the other questions presented

The effort of a judge to ascertain and express the legislative intent through statutory construction is generally regarded as an opinionative essay: but I believe the views expressed and the conclusions reached to be consonant with the accepted canons of statutory construction as expounded by courts generally and by those of last resort.

The contracts assailed are, for the reasons given, invalid.

The motion for an injunction *pendente lite* is granted and the cross-motions to dismiss the complaint are denied.   Settle order.