[No. 4403.   Decided March 19, 1903.]

JOHN T. HUETTER, *Respondent*, v. WILLIAM W. RED-
HEAD, *Appellant*.

MECHANICS' LIENS — FORECLOSURE — RESCISSION OF BUILDING CON-
TRACT — SUBSEQUENT ASSIGNMENT — RIGHTS OF ASSIGNEE.

A building contract was abandoned by mutual consent of the parties, owing to the insolvency of the builder, and a lien was filed on the building for what was due the contractor. The

premises were sold by the owner to another, to whom he assigned the building contract. The assignee demanded that the contractor proceed with the building, and upon his refusal, the assignee finished the building at his own cost. *Held*, in an action for the foreclosure of the contractor's lien, that the assignee could not apply the sum expended in the completion of the building against the claim of the contractor, as the building contract had provided, since that contract had in fact been rescinded prior to its assignment.

SAME—AMOUNT DUE—CONTRACT PRICE—SUFFICIENCY OF EVIDENCE.

In an action to enforce a mechanic's lien for labor and material put into a building prior to the rescission of a building contract, the testimony of the superintending architect that on the date of the rescission he made an estimate of all the work done and materials furnished and put into the building and that the reasonable value thereof according to the contract price was $15,193, to which should be added certain extras worth $689.28, for which plaintiff was entitled under the contract, was sufficient evidence, uncontradicted, to show that the estimate of the work done was based upon the contract price and not upon the *quantum meruit*.

SAME—INTEREST.

The allowance of interest prior to the date of a lien notice was erroneous, where the lien notice did not claim interest, and the complaint for foreclosure of the lien asked for interest only from the date of filing the notice.

Appeal from Superior Court, Spokane County.—Hon. George W. Belt, Judge. Modified and affirmed.

*Crow & Williams*, for appellant.

*F. T. Post*, for respondent.

The opinion of the court was delivered by

Mount, J.—This is an action to foreclose a mechanic's lien. Findings and a decree were made in the court below in favor of the plaintiff for the sum of $3,260.15, with interest from February 8, 1900, for attorney's fees and costs. From this decree the defendant appeals.

The facts are substantially as follows: On August 31, 1899, the respondent entered into a contract with the

George Spaulding Company, Limited, a corporation, to erect a four-story warehouse for the sum of $18,920. The contract is the usual builder's contract, and among other things provides that the building should be completed on or before December 1, 1899, and "payments to be made every two weeks as the work progresses, on estimates of the superintending architect, 85 per cent. of the amount of labor and materials actually placed in the building. Final payment to be made within ten days after the contract is fulfilled." On November 23, 1899, on account of extra work amounting to $395.78, the time of completing the building was extended twenty-one days. Thereafter, on December 28, 1899, the building not being completed, the respondent and the George Spaulding Company, Limited, entered into the following contract:

"It is hereby agreed between said parties that the original contract shall be in full force and effect until the entire contract is completed, and that this instrument shall be a part and parcel of said contract. Said party of the first part hereby agrees and promises: (1) To stop all *brick work* on said building immediately; (2) to take proper care of all materials now upon the premises and which are yet to be delivered; (3) to protect all portions of the work effectually against the action of the elements, as directed by the superintendent; (4) to commence the work within three days after receiving written notice from the superintendent; (5) to waive all claims for additional compensation on account of suspension of work; (6) to keep the surety bond in force until the contract is completed. Said parties of the second part hereby agree: (1) To pay for the following materials: For 80,081 feet of lumber now on the premises, $720; for iron work now on the premises, $245; for mill work, $200; 33,786 feet of lumber yet to be delivered, $274.07; 175,000 brick, $1,268.75. 85 per cent. to be paid every two weeks on brick delivered; balance of 15 per cent. thirty days

after all the brick have been delivered. 78,000 feet seasoned flooring $936, to be paid for in six weeks. (2) To extend the time for completion of the building to June 1, 1900."

This contract did not call for a cessation of work on the building, and respondent kept men at work on the inside thereof doing carpenter work, and also kept teams hauling material. Thereafter, on January 2, 1900, an estimate of labor and materials, amounting to $2,230, was made by the superintendent, and given to respondent. This estimate was not paid when it was presented to the Spaulding Company, but was subsequently paid on June 29, 1900. On February 8, 1900, another estimate for $282 was made, and given to respondent, which estimate has not yet been paid. The total amount paid to respondent upon the contract is $12,632. When the certificate of estimate above named, for $2,230, was presented to the Spaulding Company for payment, the respondent was informed that the company was insolvent, had no money, and could not pay the estimate. Several conferences were had thereafter between respondent and the Spaulding Company and the superintending architect. The result of these conferences was that the respondent notified the Spaulding Company and the superintendent that, unless the amount due were paid, he could not finish the building, and that the contract would be void. This was assented to by the Spaulding Company, and on February 28, 1900, all work was stopped on the building. Subsequently, on the 18th day of April, 1900, the claim of lien sought to be foreclosed in this action was filed against the property for $4,200. On the 13th day of April, 1900, the Spaulding Company agreed to sell all their interest in the uncompleted building to the appellant, and on the 26th of April duly assigned the contract with the respondent to

appellant without the consent of respondent. Appellant, at the time of the purchase of the property, knew all the facts above stated, which had occurred prior to the purchase thereof, and also that respondent claimed "something over $3,000 for work he had done on the building, which had not been paid for." After appellant purchased the building, and the contract had been assigned to him, he caused a written notice to be served on respondent, requiring him to proceed to finish the building according to the contract. Appellant also notified respondent that he was ready to go ahead with the construction of the building, and take up the estimates which had not been paid, and tendered respondent a check for $671, which respondent refused. Respondent also refused to carry out the contract. Appellant thereupon proceeded to finish the building at a cost of $6,256.19.

It is argued by appellant that the respondent was in duty bound to finish the building under the terms of the contract, and that, upon his refusal to do so after notice by appellant, appellant was at liberty to proceed under the terms of the contract, finish the building in accordance with the plans and specifications, and charge the same up to the contractor, and account to him only for the balance due, after deducting the cost thereof, and payments already made from the contract price. This argument is based on the assumption that the contract between appellant and respondent was still in force after assignment by the Spaulding Company. We think the evidence in this case clearly shows that prior to the assignment the contract between respondent and the Spaulding Company had been rescinded and abandoned by mutual consent of the Spaulding Company and respondent, and therefore that respondent was not bound to proceed with the

contract at the time of the assignment. This being true, the appellant was in the same position as his assignor, and could not revive the contract without the consent of the respondent, which was never given. Appellant's argument on this question must, therefore, fail.

The question to be determined, then, is what amount was due the respondent upon the work done at the time the contract was rescinded. It is contended by appellant that the amount found due by the lower court was based upon the *quantum meruit*, and not upon the contract price of the labor and material already in the building. The superintending architect testified that on February 8, 1900, he made an estimate of all the work done and materials furnished and put into the building, and that "the reasonable value thereof according to the contract price was $15,193;" that in addition to this sum there was an item of $389.28 for extras, and $245 for iron work on the premises, and $65, the agreed price of a platform which had not been included in his estimates; making a total of $15,892.28. We think this evidence is sufficient to show that the estimate of the work done was according to the contract price, even if the rule is as is contended for by the appellant, viz., that the amount of his recovery must be based upon the contract price of the labor and materials actually in the building at the time the contract was rescinded. There is no other evidence in the record tending to show that the work was of less value than the estimate made by the superintending architect above quoted, except that there was evidence to the effect that the price of labor and materials had increased in value at the time the respondent ceased work. But this fact does not aid appellant, because the estimates were not based on this increase of price, but

were based on the cost of labor and materials before the increase in value thereof. So that, whether the estimates were based on the contract price or on the reasonable value at the time the work was done, the result would be practically the same, and that is probably what the superintending architect meant when he said the reasonable value according to the contract price was $15,193, with the addition of the extra work. It is conceded that the payments made prior to the rescission amounted to $12,-632. The evidence shows that at the time of the rescission the labor and materials furnished according to the contract price amounted to $15,892.28. There is practically no dispute as to this amount. The difference between these amounts, viz., $3,260.28, must be the sum due the respondent at the time of the rescission. This is substantially the amount found by the lower court.

Appellant also contends that interest should not have been allowed from February 8, 1900. In this, we think, the appellant is correct. In the lien notice no claim was made for interest. In the complaint no claim was made for interest prior to April 18, 1900, the date of the filing of the lien. Where no claim is made for interest by the lien notice prior to the date thereof, and where the prayer of the complaint is for interest from the date of the lien, we think interest should not be allowed prior to that date.

The decree will be modified to this extent: that interest at the legal rate will be allowed on the amount found due, viz., $3,260.15, from April 18, 1900. In all other respects the decree is affirmed; neither party to recover costs on this appeal.

FULLERTON, C. J., and ANDERS and DUNBAR, JJ., concur.