[No. 27050. Department One. January 3, 1939.]

UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant*, v. E. I. DUPONT DE NEMOURS & COMPANY *et al.*, *Defendants*, FEENAUGHTY MACHINERY COMPANY, *Respondent.*[1]

[1]Reported in 85 P. (2d) 1085.

*Wright & Wright,* for appellant.

*Tom W. Holman* and *Harold A. Pebbles,* for respondent.

HOLCOMB, J.—After the completion of a contract for highway construction, a number of claims were filed against appellant, as surety on the contractors' bond, and with the director of highways against the retained percentage withheld by the department of highways. This action was instituted to ascertain the validity of these claims, to determine the amount of retained percentage upon the contract, and to have such amount paid into the registry of the court for disbursement in liquidation of the valid claims.

Ed. Bjork and William Strom, individually and as joint administrators of the copartnership estate of Bjork Bros., Pearson & Strom, appeared as parties plaintiff in the complaint, but by virtue of special court order, were withdrawn as parties plaintiff and substituted as parties defendant in their individual and representative capacities. Earl M. Holmes, assignee of a number of the claims, appeared as intervener.

Subsequent to the filing of the complaint, all claims were satisfactorily settled out of court except the claims of Feenaughty Machinery Co., of the Seattle Steel Co., of the Nelson Iron Works, Inc., of Bernth & Company, of Charles F. Maurer, administrator of the partnership estate of Pearson & Strom, and these are the only claims in controversy in this proceeding.

W. S. Terry filed a release of his claim as against the retained percentage, stipulated that he did not desire to litigate the matter of the validity of his claim, and elected to wage an independent action.

The trial court entered an order directing that the retained percentage, to-wit, $15,209.76, be paid into the registry of the court, and dismissed this action in respect to the state.

By virtue of a decree entered by the trial court, the Seattle Steel Co. was awarded judgment against appellant and Ed. Bjork and William Strom in the sum of $1,601.97, plus interest and costs; Bernth & Company was awarded judgment against appellant and Bjork and Strom for $296.12 and costs; Feenaughty Machinery Co. was awarded judgment against appellant and Bjork and Strom for $3,601.26 and costs, including an attorney's fee in the sum of $350. These amounts were decreed to be a lien upon the retained percentage withheld by the director of highways and enforcible against the surety bond, save the award to respondent was made a lien on that fund and the surety bond only to the extent of $2,731.17, plus an attorney's fee in the sum of $350.

The Nelson Iron Works, Inc., was given no award either against appellant or the retained percentage, but was awarded judgment against Ed. Bjork and Strom, individually and as joint administrators of the copartnership estate of Bjork Bros., Pearson & Strom in the sum of $396.68 and costs. The claim of Charles F. Maurer, administrator of the estate of Pearson & Strom, was disallowed as against appellant and the retained percentage, but the adjudication of liability of the partnership of Bjork Bros., Pearson & Strom, of the partnership of Pearson & Strom, and of the surviving members of either or both firms, was expressly re-

served, for the reason that such claims were deemed not properly before the court in this proceeding.

Appellant gave oral notice of appeal from the portions of the judgment awarding the Seattle Steel Co. $1,601.97, the Bernth & Company $296.12, and the Feenaughty Machinery Co. $2,731.17, against appellant. Thereafter, the Seattle Steel Co. and Bernth & Company acknowledged full satisfaction of their judgments, and the controversy upon this appeal is limited to respondent, Feenaughty Machinery Co.

Charles F. Maurer, administrator of the partnership estate of Pearson & Strom, also gave notice of appeal, but thereafter, pursuant to a stipulation for dismissal filed with this court, an order of dismissal was entered in respect to this cross-appellant.

In its answer and cross-complaint, respondent alleged that it furnished the copartnership of Bjork Bros., Pearson & Strom for use on the road construction in question vast quantities of materials and supplies in the total amount of $4,752.07, and in addition thereto "Timkin bits" were used and completely exhausted and consumed on the project in the sum of $2,548.67. It was further alleged that a compressor unit and one Gardner-Denver had been leased at an agreed monthly rental of $600 per month; that $2,520 was due and owing on the rental of the above-mentioned machinery, none of which have been paid; that the amount of $4,752.07 for materials and supplies was paid by the copartnership and its successors; that, in addition, respondent was paid $1,467.41 on account of "Timkin bits" consumed in the performance of this work, leaving a balance due on Timkin bits in the sum of $1,081.26 and $2,520 for rental of equipment, or a total of $3,601.26, and that a lien for that amount was filed by respondent with the director of highways.

Appellant replied, admitting that respondent supplied Timkin bits for the use of the contractors in the operations under the contract and leased machinery to the contractors at a monthly rental of $600 per month; admitted only that there was approximately $120 unpaid on the monthly rental upon the machinery; admitted respondent had filed a claim with the director of highways in the sum of $3,601.26, but denied there was any other amount due respondent in excess of $120.

The following facts may be noted: February 25, 1936, the copartnership of Bjork Bros., Pearson & Strom entered into a written contract with the state of Washington for the clearing, grading, and draining of a portion of state road No. 5, Tieton Dam Vicinity, Federal Aid Project No. 211-B, in Yakima county, between station 748+00 and station 775+60. The contractors were required to furnish a surety bond, which they did, with appellant as surety thereon, in the sum of $105,287.40. In February, 1936, the copartnership undertook to perform and to complete the construction of the above-mentioned road. Two of the copartners, Carl Bjork and Fred Pearson, died during the period of construction in November, 1936, leaving Ed. Bjork and William Strom as the surviving members of the partnership firm known as "Bjork Bros., Pearson & Strom." Upon petition to the superior court, Ed. Bjork and Strom were appointed administrators of the partnership estate.

Until November, 1936, there was also another partnership known as "Pearson & Strom," composed of Fred Pearson and William Strom. Upon the death of Pearson in November, 1936, Maurer was appointed administrator of the partnership estate.

By order of the court, Ed. Bjork and William Strom, individually and as joint members of the partnership

estate, continued operations under the contract and completed the work. After the contract had been performed, the completion thereof was accepted and approved by the department of highways and the time within which to file claims against the contractors, the surety upon their bond, and the retained percentage withheld by the department of highways, had expired at the time this action was instituted. July 8, 1937, respondent filed a claim with the director of highways in the sum of $3,601.26.

Respondent not only sold a considerable number of "Timkin bits" and other articles to the contractors for the performance of the contract, but also entered into a contract of lease with the contractors whereby it leased a portable compressor unit and a Gardner-Denver pilot with caterpillar Diesel engine at a rental rate of $600 per month.

Appellant contends the trial court erred (1) in holding "Timkin bits" are supplies and constitute a lien against the retained percentage and that the surety upon the principal contractors' bond could be held liable therefor; (2) in holding any sum was due respondent in excess of $120 for rentals upon respondent's machinery; (3) in allowing respondent interest on its claim from the time it was filed with the director of highways; and (4) in entering judgment for respondent for an attorney's fee in excess of $50.

The applicable statutes relating to the execution of a contractor's bond and the reservation of moneys earned by the contractor are Rem. Rev. Stat., §§ 1159 and 10320 [P. C. §§ 9724, 9727-1], respectively.

Rem. Rev. Stat., § 1159, prescribes:

"Whenever, any board, council, commission, trustees or body acting for the state or any county or municipality or any public body shall contract with any person or corporation to do any work for the state, county or municipality, or other public body, city, town or

district, such board, council, commission, trustees or body shall require the person or persons with whom such contract is made to make, execute and deliver to such board, council, commission, trustees or body a good and sufficient bond, with two or more sureties, or with a surety company as surety, conditioned that such person or persons shall faithfully perform all the provisions of such contract and pay all laborers, mechanics and subcontractors and materialmen, and all persons who shall supply such person or persons, or subcontractors, with *provisions and supplies* for the carrying on of such work, . . ." (Italics ours.)

Rem. Rev. Stat., § 10320, provides:

"That contracts for public improvements or work by the state, or any county, city, town, district, board, or other public body, shall provide, and there shall be reserved from the moneys earned by the contractor on estimates during the progress of the improvement or work, a sum equal to fifteen per cent (15%) of such estimates, said sum to be retained by the state, county, city, town, district, board, or other public body, as a trust fund for the protection and payment of any person or persons, mechanic, subcontractor or materialman who shall perform any labor upon such contract or the doing of said work, and all persons who shall supply such person or persons or subcontractors with *provisions and supplies* for the carrying on of such work. Said fund shall be retained for a period of thirty (30) days following the final acceptance of said improvement or work as completed, and every person performing labor or furnishing supplies towards the completion of said improvement or work shall have a lien upon said fund so reserved, provided such notice of the lien of such claimant shall be given in the manner and within the time provided in section 1161 of this Code as now existing and in accordance with any amendments that may hereafter be made thereto: . . ." (Italics ours.)

It will be observed that the cited statutes embrace only "provisions and supplies." It is admitted that, if the bits constitute equipment as distinguished from

provisions and supplies, they are neither assertable as liens against the retained percentage nor are they claims for which appellant surety may be held responsible.

In *United States Rubber Co. v. American Bonding Co.*, 86 Wash. 180, 149 Pac. 706, L. R. A. 1915F, 951, we said:

"To distinguish between materials and equipment is comparatively easy, since the term materials, as we have defined the term in *Gate City Lumber Co. v. Montesano,* 60 Wash. 586, 111 Pac. 799, includes such articles only as enter into and form a part of the finished structure, or, it may be, such articles as are capable of being so used and are furnished for that purpose, while equipment is, what the word imports, the outfit necessary to enable the contractor to perform the agreed service; the tools, implements and appliances which might have been previously used or might be subsequently used by the contractor in carrying on other work of like character."

In *National Surety Co. v. Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337, we said:

"It seems to us that the words 'provisions' and 'supplies' includes anything that is furnished for, and used directly in the carrying on of the work, and is entirely consumed thereby. Such things do not enter into and become a physical part of the finished structure, as materials do, as that word is generally construed; but they do become as much a part of the structure as the labor which is performed upon it."

The test of whether a given thing constitutes a supply or equipment is whether the article forms a part of the finished structure; and, in addition, if, although such things do not become a physical part of the finished product, structure, or improvement, they are entirely consumed in the course of the construction they are supplies and not equipment.

"Timkin bits" have only come to be used upon construction work in recent years. They are used in drilling operations through rock, and consist of a small steel block, hardened and sharpened on the face, and attached to the end of, and detached from, a shank, and the other end of the drill shank is inserted in a power drilling machine. The length of time any single bit may be used depends upon the hardness of the rock; they last from three to five minutes, may be sharpened two or three times; thereafter they are no longer usable and are discarded. Over eight thousand bits were purchased by the contractors for this project. The bits used cost between twenty-eight and thirty cents each.

In *National Surety Co. v. United States,* 228 Fed. 577, L. R. A. 1917A, 336, the court stated:

"These drills are made to be used up currently. Their life is a matter of days, if not hours. The contractor buys only his current needs on the particular job. The drills are used up in direct and immediate contact with the rock, the removal of which is the 'construction of the work,' and we are satisfied, by analogy to the powder cases, to regard such drills as materials under the statute."

There appears to be a dearth of authority in regard to whether "Timkin bits" are supplies or equipment, but we are satisfied that they are "supplies" and not "equipment." The period of time for which they may be used is very short, and they are consumed in the process of construction work.

We now consider the amount of the lien claim. The contractors purchased various articles from respondent in the total sum of $4,752.07; and they purchased "Timkin bits" from respondent in the total sum of $2,548.67, thus making a total open account indebtedness in the sum of $7,300.74. In addition, the rentals

on the leased machinery totaled the sum of $2,520, making a total indebtedness of $9,820.74. Overman, the vice-president of respondent company, testified he applied $4,752.07 to the open account exclusive of the bits, and he applied $1,467.41 in payment of the bit account, leaving a balance due on the bit account in the sum of $1,081.26, plus $2,520 for rental of the machinery, or a total of $3,601.26. A claim was filed with the director of highways in that total sum.

The testimony is conflicting with reference to the application of payments made by the contractors to respondent. Overman testified that he had an arrangement with Strom, one of the contractors, in regard to this matter, whereby payments were to be applied upon the open account, and he applied checks and moneys received from the contractors on the open account. He stated that the memorandum "Compressor rental $600," which appeared in the upper left-hand corner of checks numbered 1901 and 1996, introduced as exhibits at the trial, did not appear on their face when presented to respondent. These checks were payable to the order of respondent in the sum of $600, and signed by the contractors.

Strom denied having made any arrangement for the allocation of payments to the open account. His testimony, together with that of Frank W. Hanna, a former bookkeeper of the contractors, indicated that respondent had been directed to allocate two checks of $600 each to the rental payments, and two other payments for $600 each, thus making a total rental payment of $2,400. The trial court indicated in his memorandum opinion that the evidence preponderated in favor of finding that the contractors directed that respondent apply $2,400 to the rental account. Although the decree entered by the trial court is silent respecting the application of payments made by the contractors to

respondent's accounts, it is manifest that the decree clearly reflects the intent to allocate $2,400 to the rental account, thereby leaving the bit account and the balance due for the rental of machinery, making a total sum of $2,731.17. While appellant treated the application of the $2,400 for rental payments as a settled matter upon this appeal, and the memorandum opinion is in no way controlling, in any event we conclude that the sum of $2,400 should be allocated to the rental account.

There is at least some testimony to the effect that certain moneys were to be applied in payment of rentals due on the machinery, but no instructions appear to have been given either by appellant or the contractors in regard to the application of the balance of the moneys paid by the contractors to respondent.

The general rule in regard to the application of payments by a creditor in the absence of instructions relative thereto by the debtor has been stated as follows:

"When a debtor fails to direct how a payment is to be applied the creditor may make the application as he may see fit. It is not necessary that the debts be of the same character; so where one is due on a note and the other on a running account, the creditor may apply a payment to either. Nor are the dates of the obligations material, and he may appropriate the money to the earliest or latest one of his option." 21 R. C. L. 90, § 95.

In *Sturtevant Co. v. Fidelity & Deposit Co.*, 92 Wash. 52, 158 Pac. 740, L. R. A. 1917C, 630, we said:

"It is elementary law that a 'creditor may apply a payment, voluntarily made by a debtor without any specific appropriation where there are two or more debts, to whichever debt he pleases.' [Citing cases.]"

See, also, *Washington Grocery Co. v. Citizens' Bank*, 132 Wash. 244, 231 Pac. 780, and 48 C. J. 647, § 94.

Assuming, without deciding, appellant surety did have the right to protect itself by ascertaining the amount paid by the contractors to respondent from time to time and demanding that such payments be applied to certain accounts, the fact is that appellant did not do so. *Globe Electric Co. v. Union Leasehold Co.*, 166 Wash. 45, 6 P. (2d) 394; *Sturtevant Co. v. Fidelity & Deposit Co., supra.* It follows, therefore, that the application of payments made by respondent on the accounts was not improper.

█ That the rentals due on machinery constitute "provisions and supplies" within the meaning of Rem. Rev. Stat., § 1159, and hence are a secured item under the terms of the bond given pursuant to that statute, is not open to question, in view of pronouncements of this court in *Hurley-Mason Co. v. American Bonding Co.*, 79 Wash. 564, 140 Pac. 575, and *National Lumber & Box Co. v. Title Guaranty & Surety Co.*, 85 Wash. 660, 149 Pac. 16. These two cases involved actions against a surety on a bond given in accordance with Rem. Rev. Stat., § 1159, to recover rentals due on machinery used by contractors. In both cases, the court held the rental value of the machinery hired by the contractors in the conduct of the work fell within the terms of the contract, and is recoverable from the bondsman as a supply furnished by the contractor, on the ground that the thing furnished, namely, the use of machinery as distinguished from the machinery itself, was consumed in the performance of the contract. The lien awarded to respondent by the judgment is in the appropriate sum.

█ Appellant next contends that the lower court erred in allowing respondent interest from the date of the filing of its claim with the director of highways, namely, from July 8, 1937. This question has been determined adverse to appellant's contention in *Hal-*

*leran v. Sander,* 163 Wash. 619, 1 P. (2d) 847. That case involved an action brought by the contractors, who had entered into a written contract for the construction of a state highway, to settle certain matters in dispute between themselves and lien claimants, subcontractors, and others. There was the usual contractor's bond with a surety, and retained percentage withheld by the state. It was asserted that the allowance of interest was improper. We said:

" 'We have held that interest is allowable upon claims filed under lien laws from the date of filing the lien notice. *Siler Mill Co. v. Nelson Co.,* 94 Wash. 477, 162 Pac. 590; *Brace & Hergert Mill Co. v. Burbank,* 87 Wash. 356, 151 Pac. 803; *Cornelius v. Washington Steam Laundry,* 52 Wash. 272, 100 Pac. 727; *Huetter v. Redhead,* 31 Wash. 320, 71 Pac. 1016.' "

Finally, appellant insists that the attorney's fee fixed was unreasonable. Rem. Rev. Stat., § 1161 [P. C. § 9727], relates to the contractor's bond referred to in Rem. Rev. Stat., § 1159, and provides the claimant shall be entitled to "attorney's fees in such sum as the court shall adjudge reasonable." We have examined the testimony relative to the legal services rendered, and, considering the time expended and the nature of the services, are convinced that the attorney's fee allowed respondent is reasonable.

Judgment affirmed.

STEINERT, C. J., MAIN, and BLAKE, JJ., concur.

ROBINSON, J. (dissenting)—I dissent from the foregoing opinion and particularly from that portion of it which holds that Timkin bits are supplies within the meaning of the statute. I think that, both in reason and upon authority, they are contractors' equipment.