[No. 75096-3.   En Banc.]
Argued January 19, 2005.      Decided March 3, 2005.

LRS ELECTRIC CONTROLS, INC., *Plaintiff*, TYKO MECHANICAL, L.L.C., *Respondent*, v. HAMRE CONSTRUCTION, INC., *Petitioner*, PUBLIC HOSPITAL DISTRICT NO. 1 OF PEND OREILLE COUNTY, *Respondent*, FIRST NATIONAL INSURANCE COMPANY OF AMERICA, *Petitioner*.

*Dianne K. Rudman* (of *Rudman Law Office*) and *Scott R. Smith* (of *Stamper, Rubens, Stocker & Smith, P.S.*), for petitioners.

*Teresa A. Sherman* (of *Paukert & Sherman, P.L.L.C.*), for respondents.

*Jerret E. Sale* and *Deborah L. Carstens* on behalf of Surety Association of America, amicus curiae.

¶1 OWENS, J. — The central question presented is whether preclaim notice requirements, generally necessary to recover on a materials claim against either a contractor's bond (RCW 39.08.065) or a retained percentage (RCW 60.28.015), apply to second-tier subcontractors supplying both materials and labor to a public works project. We are also asked to determine whether payments received by a second-tier subcontractor are deemed to apply pro rata between the labor and the materials portions of a contract where the materials portion is barred. Upon motions for summary judgment, the superior court concluded that (1) the preclaim notice requirements apply to second-tier subcontractors, (2) the second-tier subcontractor's materials claim is barred in this case for failure to provide notice, and (3) there can be no pro rata application of payments to a barred materials claim. The Court of Appeals reversed, holding that second-tier subcontractors providing both materials and labor are exempt from the preclaim notice requirements in RCW 39.08.065 and RCW 60.28.015. We reverse the Court of Appeals.

## FACTS

¶2 The public works construction project at issue involves a hierarchy of four levels. At the top is the owner, Public Hospital District No. 1 (Hospital), which set out to make improvements to Newport Community Hospital. The second level is represented by petitioner Hamre Construction, Inc. (Hamre), the primary contractor hired by the Hospital. Third, there is the now-defunct C&R Plumbing and Heating, Inc. (C&R), subcontracted by Hamre to complete the mechanical systems work on the project. Finally, there is respondent Tyko Mechanical, L.L.C. (Tyko), which was sub-subcontracted by C&R to install the project's heating, ventilation, and air-conditioning (HVAC) system.[1]

¶3 Tyko was hired by C&R to provide "all supervision,

---

[1] LRS Electric Controls, Inc. (LRS) was, like Tyko, a second-tier subcontractor hired by C&R. LRS has settled with Hamre and is no longer a part of this case.

materials, labor, supplies and equipment" for the HVAC system for a sum of $16,500. Clerk's Papers at 25. During performance, Tyko sent invoices to C&R setting out a schedule of values for the HVAC work. These invoices state that, of the $16,500 contract price, materials represented $9,017 (54.6 percent) and labor represented $7,483 (45.4 percent). There is no dispute that Tyko adequately performed all duties required under its contract with C&R.

¶4 Initially, Hamre made incremental payments to C&R alone as work on the project progressed, including the HVAC work done by Tyko as a second-tier subcontractor. However, Hamre eventually learned of C&R's financial difficulties and made its final $7,000 check due under the Hamre/C&R contract jointly payable to C&R and Tyko. Having received no payment from C&R, Tyko requested, and C&R agreed, that Tyko would receive the $7,000 jointly payable check issued by Hamre. The status of the parties at this point was as follows: (1) Hamre had completely fulfilled its contract with C&R, (2) Tyko had completely fulfilled its contract with C&R but had received only $7,000 from C&R (via Hamre's final payment) and was still owed $9,500, and (3) C&R was entering bankruptcy.

¶5 In an effort to recover the $9,500 it was owed for the HVAC work, Tyko filed a notice of claim against Hamre's contractor's bond and the Hospital's retained percentage in an attempt to establish liens. Tyko then endeavored to foreclose on the lien claims by filing a complaint in Pend Oreille Superior Court. Early in the litigation, Hamre attempted to settle this dispute by paying Tyko $2,628.22, representing the sum Hamre mistakenly believed was still owing to Tyko. Hamre misread its own records and concluded that Tyko had been paid two installments of $7,000, rather than only one. Thus, Hamre believed that Tyko was owed only an additional $2,500 out of the total beginning balance of $16,500. To that effect, Hamre paid Tyko the $2,628.22 (the principal sum of $2,500 plus interest) with the expectation that the matter was fully resolved. Understandably, Tyko clarified the situation for Hamre and proceeded with efforts to foreclose on the lien claims.

¶6 Rather than make any further settlement payments, Hamre moved for summary judgment on the grounds that Tyko failed to comply with certain preclaim notice provisions required in both the contractor's bond and retained percentage statutes.[2] While there was no dispute that Tyko did not provide the written notice described in RCW 39.08.065 and RCW 60.28.015, the summary judgment motion turned on the question of whether those notice requirements were even applicable. Hamre argued that notice requirements were broad, as they apply to every person, firm, or corporation furnishing materials, supplies, or provisions/equipment to be used in the construction. RCW 39.08.065; RCW 60.28.015. Tyko responded that the notice requirements should be read narrowly to apply only in cases where the claimant is a true "materialman," that is, a third party who delivers materials to a subcontractor for incorporation but does not contribute labor to the construction project itself. The trial court accepted Hamre's interpretation and granted the motion for summary judgment, which barred the materials portion of Tyko's claim.

¶7 The parties, having not yet begun to fight, filed cross motions for summary judgment. Hamre moved to have the case dismissed, reasoning that the $9,628 it paid Tyko more than covered the labor portion of Tyko's claim ($7,483), which was all that remained after the previous summary judgment motion. In response, Tyko noted that only the *materials* portion of its claim was barred after the first summary judgment motion. Because a lien for the value of a second-tier subcontractor's *labor* requires no preclaim notice, Tyko moved for judgment that the $9,628 it received from Hamre must be applied on a pro rata basis to the entire $16,500 (not just labor) and, therefore, a portion

---

[2] Contractor's bonds for public works projects are required under RCW 39.08.010. The "retained percentage" is an amount, up to five percent of the contract price, that must be reserved by the public body (e.g., the Hospital) for the payment of persons who perform work or provide materials for a public works project. RCW 60.28.010.

of the labor claim remained unsatisfied.[3] The trial court accepted Hamre's contention that one cannot divide payments on a pro rata basis between a valid claim (labor) and a barred claim (materials). Thus, the case was dismissed.

¶8 On appeal, Tyko assigned error to the trial court's interpretation of the preclaim notice statutes and, alternatively, to the ruling that the $9,628.22 could not be applied on a pro rata basis. Division Three of the Court of Appeals reversed as to the statutory interpretation question but, as a result, did not reach the pro rata application issue. *LRS Elec. Controls, Inc. v. Hamre Constr., Inc.*, 119 Wn. App. 606, 612-14, 82 P.3d 248 (2004). The court reasoned that because the purpose of the preclaim notice statutes is to protect primary contractors from unknown obligations incurred by subcontractors, second-tier subcontractors who provide labor to the construction (and thereby provide actual notice of their existence) are exempt. *Id.* at 611-12. The appeal also included a request by Hamre for attorney fees and costs under RAP 18.1 and RCW 4.84.250-.290. Tyko made no such request. As the losing party, Hamre's request for attorney fees and costs was summarily denied. *Id.* at 614.

## ISSUES

¶9 1. Are second-tier subcontractors who supply both materials and labor to a public works project exempt from the preclaim notice requirements in RCW 39.08.065 and RCW 60.28.015?

¶10 2. If a second-tier subcontractor is not exempt and its materials claim is barred, does that second-tier subcontractor apply payments received on a pro rata basis between the labor and materials portions of its contract?

¶11 3. Is Hamre entitled to attorney fees and costs under RAP 18.1 and RCW 4.84.250-.290?

---

[3] Arithmetic reveals that a pro rata application of the $9,628 between the materials portion ($9,017) and labor portion ($7,483) would leave Tyko with a balance of approximately $3,092 remaining on its labor claim against Hamre.

## ANALYSIS

■ ¶12 *Standard of Review.* The parties agree that the facts described above are not in dispute and the questions presented were appropriate for summary judgment disposition. "The standard of review of an order of summary judgment is de novo, and the appellate court performs the same inquiry as the trial court." *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* CR 56(c). "Additionally, statutory interpretation is a question of law, which we review de novo." *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). Where statutory language is " 'plain, free from ambiguity and devoid of uncertainty, there is no room for construction because the legislative intention derives solely from the language of the statute.' " *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 752, 888 P.2d 147 (1995) (quoting *Krystad v. Lau*, 65 Wn.2d 827, 844, 400 P.2d 72 (1965)).

■ ¶13 *Preclaim Notice Requirements for Materials Claims in RCW 39.08.065.* The first question presented is whether a party who supplies both materials and labor, but is not in privity of contract with the prime contractor, must provide written notice of the materials furnished to the project under RCW 39.08.065. The contractor's bond preclaim notice requirement states in full as follows:

> **Notice to contractor condition to suit on bond when supplies are furnished to subcontractor.** *Every person, firm or corporation furnishing materials, supplies or provisions to be used in the construction, performance, carrying on, prosecution or doing of any work* for the state, or any county, city, town, district, municipality or other public body, *shall, not later than ten days after the date of the first delivery of such materials, supplies or provisions to any subcontractor* or agent of any person, firm or corporation having a subcontract for the construction, performance, carrying on, prosecution or doing of

such work, *deliver or mail to the contractor a notice in writing* stating in substance and effect that such person, firm or corporation has commenced to deliver materials, supplies or provisions for use thereon, with the name of the subcontractor or agent ordering or to whom the same is furnished and that such contractor and his bond will be held for the payment of the same, and no suit or action shall be maintained in any court against the contractor or his bond to recover for such material, supplies or provisions or any part thereof unless the provisions of this section have been complied with.

RCW 39.08.065 (emphasis added). We have previously identified the policy behind this preclaim notice as "enabl[ing] the prime contractor to protect himself [or herself] against the obligations of the subcontractor, so that he [or she] may not be compelled to pay twice for the same materials." *Austin v. C.V. Wilder & Co.*, 65 Wn.2d 456, 458, 397 P.2d 1019 (1965) (citing *Cascade Lumber & Shingle Co. v. Wright*, 99 Wash. 421, 426, 169 P. 833 (1918)).

¶14 Hamre argues that the Court of Appeals erred by ignoring the following: (1) RCW 39.08.065 applies to "[e]very person, firm or corporation furnishing materials" to a subcontractor without qualification; (2) Tyko was a third party furnishing materials to a subcontractor (C&R) in the form of an HVAC system representing 55 percent of the total contract price; and, therefore, (3) the statute was applicable and Tyko's materials claim is barred for failure to provide notice. In response, Tyko invites us to ignore this plain and persuasive logic in favor of either the Court of Appeals analysis or an additional statutory construction argument of Tyko's own making. For the reasons that follow, we decline Tyko's invitation.

■ ■ ¶15 The Court of Appeals erred in its analysis when it concluded that Tyko is not subject to the preclaim notice requirement. First, the court improperly created a judicial exception to the unambiguous requirements in RCW 39.08.065. The court appears to have concluded that all third parties installing their own materials, under agreement with a subcontractor, provide primary contrac-

tors with actual notice of their existence and need not provide written notice under RCW 39.08.065. *LRS Elec.*, 119 Wn. App. at 611-12. Both the premise and the conclusion of this reasoning are mistaken. Not every second-tier subcontractor providing labor and materials will provide actual notice to the primary contractor by its mere presence, particularly on large projects. Additionally, nothing in RCW 39.08.065 suggests that an "actual notice" exception was intended by the legislature. While we have previously identified the purpose of the statute as enabling primary contractors to protect themselves against unknown third parties, the statute is clear in that it applies to "[e]*very* person, firm or corporation furnishing materials, supplies or provisions." RCW 39.08.065 (emphasis added). Tyko furnished materials.

¶16 Second, the following passages indicate that the court failed to recognize the importance of Tyko's status as a third party rather than a direct subcontractor:

The dispute is over whether [Tyko] must file a notice of intention to file a material lien, *where no materials were furnished by a third party*.

. . . .

[W]hen [RCW 39.08.065] is read in context, it persuasively suggests to us a legislative intent to require notice of an intent to claim a material lien *only when materials are supplied by someone other than the subcontractor*.

. . . .

We conclude then that *the requirements of RCW 39.08.065 do not apply to subcontractors* who bring and install their own materials.

*LRS Elec.*, 119 Wn. App. at 610-12 (emphasis added). Tyko was in fact a third party, via C&R, and had no privity of contract with Hamre. This distinction is fundamental. The contractor's bond gives third parties a statutory right to recover from the primary contractor for materials and labor in absence of any contractual relationship. RCW 39.08.010. In turn, the preclaim notice statute operates as a limitation

on that right—protecting primary contractors from double liability on materials claims made by all manner of unknown third parties. *See C.V. Wilder & Co.*, 65 Wn.2d at 458. The court's conclusion that Tyko's status as a *second-tier* subcontractor was somehow equivalent to that of a direct subcontractor led it to impermissibly alter the statutory duties of the parties.

¶17 Rather than rely solely on the Court of Appeals opinion, Tyko raises an additional statutory construction argument in support of its claim to be exempt from the preclaim notice requirement. The crux of this argument relies on the language in RCW 39.08.065 that defines the event that triggers the 10-day notification period, which states as follows: "after the date of the first delivery of such materials, supplies or provisions to any subcontractor." Tyko contends that this language precludes the application of RCW 39.08.065 because, as a party installing its own materials, it never delivered those materials to the subcontractor C&R.[4] Tyko's "delivery" argument is not well taken. First, Tyko's duty to bring and install the HVAC materials existed only by virtue of its relationship with C&R. Thus, Tyko did deliver the HVAC system to C&R in the sense Tyko was acting solely on C&R's behalf—a condition precedent on C&R's contractual right to receive payment from Hamre. Second, an adoption of Tyko's interpretation would flatly contradict the statement in RCW 39.08.065 that preclaim notice is required of "[e]very person, firm or corporation furnishing materials, supplies or provisions."

¶18 In sum, we hold that the preclaim notice in RCW 39.08.065, required to recover on a materials claim against a contractor's bond, is not rendered irrelevant merely because the claimant provides both materials and labor. Nothing in the plain and unambiguous language of the

---

[4] In support of Tyko's argument, we are referred to *Apex Glass & Sash, Inc. v. City of Seattle*, 5 Wn. App. 794, 490 P.2d 885 (1971) (stating implicitly that delivery occurred at the time and place of physical delivery of materials to the subcontractor). Contrary to Tyko's interpretation, the sparse discussion of RCW 39.08.065 in *Apex Glass* did not offer a comprehensive definition of when and how delivery occurs.

statute indicates that the legislature intended such a result. Thus, we conclude that RCW 39.08.065 was at all times applicable to Tyko and Tyko's failure to provide timely notice is a complete bar to recovery on its $9,017 materials claim against Hamre's contractor's bond.

■ ¶19 *Preclaim Notice Requirements for Materials Claims in RCW 60.28.015*. The next question is whether the preclaim notice required for recovery against the retained percentage includes any language that alters the analysis discussed above. RCW 60.28.015 states in relevant part as follows:

> **Recovery from retained percentage—Written notice to contractor of materials furnished.** *Every person, firm, or corporation furnishing materials, supplies, or equipment to be used in the construction, performance, carrying on, prosecution, or doing of any work* for the state, or any county, city, town, district, municipality, or other public body, *shall give to the contractor of the work a notice in writing, which notice shall cover the material, supplies, or equipment furnished or leased during the sixty days preceding the giving of such notice as well as all subsequent materials, supplies, or equipment furnished or leased*, stating in substance and effect that such person, firm, or corporation is and/or has furnished materials and supplies, or equipment for use thereon, with the name of the subcontractor ordering the same, and that a lien against the retained percentage may be claimed for all materials and supplies, or equipment furnished . . . .

(Emphasis added.) In this case, timing is the only substantive difference between the preclaim notice required for the retained percentage and contractor's bond.[5] Unlike the contractor's bond statute (10 days), a claimant need only provide notice of all materials furnished within the previous 60 days and must provide additional notice for all subsequent deliveries. There is no dispute that Tyko did not comply with the retained percentage timing requirements. Again, only the question of the statute's applicabil-

---

[5] Notably, the retained percentage statute applies to "materials, supplies, or equipment," while the contractor's bond applies to "materials, supplies or provisions." RCW 60.28.015; RCW 39.08.065. Only materials are at issue in this case.

ity is at issue.

¶20 As with the contractor's bond, the Court of Appeals mistakenly failed to identify Tyko as a third party, stating as follows: "But again, the language of the statute suggests to us that the materials, of concern, are those coming from some third party." *LRS Elec.*, 119 Wn. App. at 613. Tyko was in fact a third party. Moreover, there is no indication that the legislature intended to establish an "actual knowledge" exception to the preclaim notice required for recovery against the retained percentage. Accordingly, Tyko was subject to the preclaim notice requirement and is barred from recovering against the retained percentage.

■ ¶21 *Pro Rata Application of Payments to a Barred Materials Claim.* Tyko argues, in the alternative, that a balance of $3,092 remains on the labor portion (originally $7,483) of its contract even if it is barred from recovering on the materials portion. Tyko claims that it necessarily applied the two payments from Hamre ($7,000 and $2,628.22) to the total amount it was due ($16,500) on a pro rata basis; thus, reducing the total balance to $6,871.78, where $3,092 represents labor and $3,779.78 represents the barred materials claim. In response, Hamre argues that one cannot apply payments received to a nonexistent materials claim and, therefore, all payments received by Tyko could have applied only to the labor claim.

¶22 Both parties rely on principles from our payment application jurisprudence to support their respective positions. As a general rule, we have held that " 'when a debtor fails to direct how a payment is to be applied the creditor may make the application as he may see fit.' " *United States Fid. & Guar. Co. v. E.I. Dupont De Nemours & Co.*, 197 Wash. 569, 579, 85 P.2d 1085 (1939) (quoting 21 RULING CASE LAW 90, § 95). Where neither creditor nor debtor appropriates the payment, a court will apply the payment " 'according to its own notion of the intrinsic equity and justice of the case.' " *Post-Intelligencer Publ'g Co. v. Harris*, 11 Wash. 500, 502, 39 P. 965 (1895) (quoting *Cremer v. Higginson*, 1 Mason 323, 6 F. Cas. 797, 802 (C.C.D. Mass. 1817)). Tyko relies on

these rules in arguing that we should conclude that the payments it received were applied to *both* the materials and labor portions of its contract. However, at least one court has concluded that the payment application rules operate only where there is an established debtor/creditor relationship. *See Oakes Logging, Inc. v. Green Crow, Inc.*, 66 Wn. App. 598, 603, 832 P.2d 894 (1992) (where no contractual relationship existed, owner became subcontractor's debtor only by virtue of an enforceable logger's lien).

¶23 The *Oakes Logging* court's recognition that a valid debtor/creditor relationship is necessary to implicate the payment application rules is correct. The rules exist to allow parties with legal obligations to one another to plan their behavior according to reasonably certain outcomes. Where no relationship exists, the payment application default rules have no effect. When Hamre issued the $7,000 jointly payable check to C&R and Tyko, Tyko had no contractual or statutory right to payment from Hamre on its materials claim. On point of fact, the materials claim was permanently barred for failure to provide preclaim notice. Tyko did, however, maintain a right to payment for the labor portion of its work against Hamre, which requires no preclaim notice. While Tyko could sustain the argument that it applied the payments on a pro rata basis to its claim against C&R—because it maintained a contractually based right to payment for both labor and materials against C&R—we are concerned here only with the relationship between Hamre and Tyko. Thus, with regard to its pursuit of recovery against Hamre, Tyko could have applied payments received only to the valid labor claim. The labor portion of Tyko's contract amounted to $7,483. Tyko received $9,628.22. Therefore, Tyko's labor claim against the contractor's bond and retained percentage has been fully satisfied.

■ ¶24 *Recovery of Attorney Fees under RAP 18.1 and RCW 4.84.250-.290.* Hamre requests attorney fees and costs pursuant to RAP 18.1 and RCW 4.84.250-.290. RAP 18.1 provides that a party must request fees and costs in its

briefing before the Court of Appeals or Supreme Court to recover such fees and costs. Hamre made such a request before the Court of Appeals as well as in its petition for review. RCW 4.84.250 states in relevant part as follows:

Notwithstanding any other provisions of chapter 4.84 RCW and RCW 12.20.060, in any action for damages where the amount pleaded by the prevailing party as hereinafter defined, exclusive of costs, is [ten thousand] dollars or less, *there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees.*

(Emphasis added.) Similarly, RCW 4.84.290 allows for a prevailing party to recover attorney fees and costs on appeal. RCW 4.84.270 defines "prevailing party" with regard to a defendant's request for attorney fees under RCW 4.84.250 and .290 as follows:

The defendant, or party resisting relief, *shall be deemed the prevailing party within the meaning of RCW 4.84.250, if the plaintiff*, or party seeking relief in an action for damages where the amount pleaded, exclusive of costs, is equal to or less than [ten thousand dollars], *recovers nothing*, or if the recovery, exclusive of costs, is the same or less than the amount offered in settlement by the defendant, or the party resisting relief, as set forth in RCW 4.84.280.

(Emphasis added.) Because Tyko is subject to the preclaim notice requirements in RCW 39.08.065 and RCW 60.28.015, and Tyko could not make a pro rata application of payments received to the barred materials claim, Tyko will recover nothing. Therefore, under RCW 4.84.250-.290, Hamre's request for attorney fees is awarded as of right.

## CONCLUSION

¶25 The preclaim notice requirements in RCW 39.08.065 and RCW 60.28.015 apply to every person, firm, or corporation furnishing materials, supplies, or provisions/equipment to be used in the construction, performance, carrying on, prosecution, or doing of any work on a public works

project. Tyko provided materials for the HVAC system that were incorporated into the hospital project and represented approximately 55 percent of Tyko's contractual obligation. Accordingly, under the plain language of RCW 39.08.065 and RCW 60.28.015, Tyko was subject to the preclaim notice requirements and its failure to provide such notice is a bar to recovery on the materials claim. Tyko's alternative argument that it applied payments received from Hamre on a pro rata basis between materials and labor fails because Tyko never established a materials claim against Hamre and Tyko has been fully compensated for its labor claim. For these reasons, we reverse the Court of Appeals, reinstate the judgment of the superior court, and award Hamre its request for attorney fees and costs under RCW 4.84.250-.290.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, FAIRHURST, and J.M. JOHNSON, JJ., concur.