Honorable Jerome Delvin State Senator, 8th District P.O. Box 40408 Olympia, WA 98504-0408
Dear Senator Delvin:
By letter previously acknowledged, you have asked for our opinion on the following questions:
 1. If several contiguous cities have each formed a public facilities district coextensive with boundaries of each city under RCW 35.57, may the cities join together to form another public facilities district under RCW 35.57 that would be coextensive with the boundaries of all the cities?
 2. If the answer to Question 1 is yes, could the voters of the new public facilities district impose a sales and use tax under RCW 82.14.048 and .390(1)?
 BRIEF ANSWER
We conclude that RCW 35.57 does not allow cities that have formed separate public facilities districts to join together to form a new public facilities district that overlaps the existing districts. RCW 35.57 gives each public facilities district specific, limited authority to impose taxes and issue bonds. The statutory limitations would be rendered meaningless if additional authority to impose taxes and issue bonds could be created by forming a new public facilities district, with boundaries overlapping existing public facilities districts. Because we have answered your first question in the negative, we do not reach your second question.
[original page 2] ANALYSIS
RCW 35.57.010 sets forth the manner in which a city or town may create a public facilities district (PFD). The statute states, in relevant part:
 (1)(a) The legislative authority of any town or city located in a county with a population of less than one million may create a public facilities district.
 (b) The legislative authorities of any contiguous group of towns or cities located in a county or counties each with a population of less than one million may enter an agreement under chapter 39.34
RCW for the creation and joint operation of a public facilities district.
 (c) The legislative authority of any town or city, or any contiguous group of towns or cities, located in a county with a population of less than one million and the legislative authority of a contiguous county, or the legislative authority of the county or counties in which the towns or cities are located, may enter into an agreement under chapter 39.34 RCW for the creation and joint operation of a public facilities district.
 (2)(a) A public facilities district shall be coextensive with the boundaries of the city or town or contiguous group of cities or towns that created the district.
RCW 35.57.010(1)(a)-(2)(a).
In determining the scope of authority to form PFDs, the first line of analysis is to consider legislative intent as expressed in the plain language of RCW 35.57.010. Nat'l Elec. ContractorsAss'n v. Riveland, 138 Wn.2d 9, 19, 978 P.2d 481 (1999). When the language of the statute is plain and unambiguous, the legislative intent is derived solely from the language of the statute. LRS Elec. Controls, Inc. v. Hamre Constr., Inc.,153 Wn.2d 731, 738, 107 P.3d 721, (2005). If a statute is susceptible to more than one reasonable interpretation, it is ambiguous. However, a statute is not ambiguous simply because multiple interpretations are conceivable. United States v. Hoffman,
___ Wn.2d ___, 116 P.3d 999 (2005). When a statute is unambiguous, "statutory inquiry ends with the plain language of the statute" and the Legislature is assumed to mean exactly what the statute says. State v. Salavea, 151 Wn.2d 133, 142, 86 P.3d 125 (2004) (quoting State v. Delgado, 148 Wn.2d 723, 727-28, 63 P.3d 792
(2003)).
Consideration of a statute's plain meaning "also includes examining closely related statutes." Dep't of Ecology v.Campbell Gwinn, LLC., 146 Wn.2d 1, 11, 43 P.3d 4 (2002) (quoting 2A Norman J. Singer, Statutes and StatutoryConstruction § 48A:16, at 809-10 (6th ed. 2000)). A court may not "read a provision in isolation when it is engaging in statutory interpretation". Skamania Cy. v. Columbia River GorgeComm'n, 144 Wn.2d 30, 45, 26 P.3d 241 (2001). Rather than reading RCW 35.57.010 in a vacuum, the intent of the Legislature is best understood by considering the full scope of authority granted to PFDs in RCW 35.57 to raise revenue and engage in construction, renovation, and operation of regional centers.
[original page 3] RCW 35.57 enables PFDs to raise revenue through taxes and issuance of bonds. The Legislature did not give PFDs broad taxing authority. Rather, RCW 35.57.040(1)(d) states that taxes may be imposed pursuant to RCW 82.14.048 and .390 to fund a regional center. Under RCW 82.14.048, a PFD may impose a voter approved sales and use tax. Even though the voters are able to accept or reject the tax, it is still limited to a maximum rate of two-tenths of one percent. This tax is in addition to all other taxes authorized by state law. PFDs created prior to July 31, 2002, that began construction, improvement, or rehabilitation of a regional center prior to January 1, 2004, may also enact a sales and use tax of up to .033 percent. RCW 82.14.390(1). As with the tax authorized by RCW 82.14.048, this tax is in addition to all other taxes authorized by state law. Id. However, the tax authorized by RCW 82.14.390(1) does not increase the total sales and use tax burden within the boundaries of the PFD, because the tax is deducted from the amount of tax otherwise collected or paid to the state pursuant to RCW 82.08 or 82.12. RCW 82.14.390(2).[1] If these tax statutes were found to be ambiguous, they would be construed most strongly against the taxing authority. Simpson Invest. Co. v. State, 141 Wn.2d 139,149, 3 P.3d 741 (2000).
As with the authority to impose taxes, the power to issue bonds is constrained. RCW 35.57.030(1) states that a PFD may issue general obligation bonds in an amount (together with nonvoter-approved general obligation indebtedness) up to one-half of one percent of the value of the taxable property in the district. Voter approved general obligation bonds may also be issued for capital purposes, in an amount (together with general obligation indebtedness) not to exceed one and one-fourth percent of the value of the taxable property of the district.
If RCW 35.57.010(1) were read broadly to permit a city to create multiple PFDs with overlapping boundaries, the statutory limitations on the authority to impose taxes and issue bonds would have little meaning, as they could be avoided simply by forming a new PFD each time a new project is envisioned. Each PFD would have authority to increase the total tax burden in the district by enacting a sales and use tax of two-tenths of one percent. RCW 82.14.048. If the PFDs were created prior to July 31, 2002, and had begun construction, improvement, or rehabilitation of a regional center prior to January 1, 2004, each PFD could enact another tax of .033 percent, or a total tax of .099 percent. RCW 82.14.390(1). Since taxes authorized by RCW82.14.390(1) are deducted from the tax otherwise collected by or paid to the state, there would be a corresponding decrease in state revenue. In addition to establishing taxes, each PFD would also have the ability to issue new general obligation bonds of up to one and one-fourth percent of the value of the taxable property of the district, pursuant to RCW 35.57.030(1). When RCW35.57.010(1) is read in the context of RCW 35.57, it is apparent that the Legislature intended to strictly limit the ability of the PFDs to raise revenue. If RCW 35.57.010(1) were read in a manner that would permit creation of multiple, overlapping PFDs, the restrictions on the authority to impose taxes and issue bonds would be virtually meaningless.
[original page 4] Reading RCW 35.57.010(1) as creating alternative options for the creation of one PFD per jurisdiction is also consistent with the authority to construct, renovate, and operate regional centers. A PFD created pursuant to RCW 35.57.010
"is authorized to acquire, construct, own, remodel, maintain, equip, reequip, repair, finance, and operate one or more regional centers." RCW 35.57.020(1). The Legislature enabled a PFD to operate multiple regional centers, without forming overlapping PFDs.
We conclude that reading RCW 35.57.010(1) as authorizing each eligible jurisdiction to participate in the creation of a single PFD — rather than allowing each jurisdiction to participate in the creation of numerous PFDs with the same or overlapping boundaries — best carries out the language and intent expressed in RCW 35.57. Since we have answered your first question in the negative, we do not reach the second question.
We trust this opinion will be of assistance to you.
Sincerely,
 ROB MCKENNA Attorney General
 ANNE EGELER Assistant Attorney General
[1] The taxing authority of a PFD formed by a county pursuant to RCW 36.100 is similarly restricted by the Legislature. A PFD created under RCW 36.100 may levy a tax of up to ten percent on parking charges and five percent on admission charges at its regional centers. RCW 36.100.220; .210. Under some circumstances, the PFD may impose a lodging tax in the district of up to two percent, as well as an ad valorum property tax. RCW 36.100.040; . 050. Finally, as a PFD created under RCW 35.57, a PFD created under RCW 36.100 may impose taxes pursuant to RCW 82.14.048 and .390.